FILED
CLERK
9/30/2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAE HYUK KWON,

                      Plaintiff,

    -against-

SANTANDER CONSUMER U.S.A.,

                      Defendant.
----------------------------------------------------------X

**OPINION AND ORDER**
15-cv-3352 (SJF)(AKT)

**FEUERSTEIN, District Judge:**

*Pro se* Plaintiff Dae Hyuk Kwon ("Plaintiff" or "Kwon") commenced this action against Defendant Santander Consumer U.S.A. ("Defendant" or "Santander") seeking to recover damages arising out of an allegedly usurious automobile loan. *See* Docket Entry ("DE") [2], Compl. Presently before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes. DE [35]. For the reasons set forth herein, Defendant's motion to dismiss is granted in its entirety.

**I.    BACKGROUND**

Unless otherwise noted, the following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion.

**A.  Factual Background**

On May 14, 2013, Kwon purchased a 2008 Lexus ES 350 automobile from non-party Masterz Automotive Intl., Inc. ("Masterz") for twenty-one thousand, seven hundred and thirteen dollars ($21,713.00), with a down payment of three thousand dollars ($3,000.00). Compl. § III(C). In conjunction with Plaintiff's purchase, non-party RoadLoans, a subsidiary of Defendant, drafted an automobile loan contract with an interest rate of twenty-five percent (25%) per annum (the "Loan"). *Id.* Masterz reviewed RoadLoans' proposed contract, contacted Santander, and reduced the interest rate to twenty-four and ninety-nine one hundredths percent (24.99%). *Id.* Masterz

1

also offered Kwon "warranty services" for three thousand dollars ($3,000.00), which Kwon declined. *Id.*; *see also* Plaintiff's Affidavit and Written Deposition ("Pl.'s Aff."), DE [2], at 1. Plaintiff did not submit a copy of the Loan agreement with his Complaint or in opposition to the instant motion, and the parties to the agreement are not readily apparent from the face of the Complaint. However, in his Affidavit and Written Deposition, Plaintiff writes that Masterz "assigned the contract to Santander Consumer USA . . . ." Pl.'s Aff. at 1.

According to Plaintiff, he did not receive a copy of the contract or a bill of sale from Masterz at the time of purchase. Compl. § III(C). Plaintiff alleges that when he eventually received a copy of the contract in the mail, Masterz had "forged the warranty charge on the contract," and that the "warranty was put into the contract without [his] approval." Pl.'s Aff. at 1-2. Nevertheless, in June, July, and August 2013, Kwon made payments of five hundred and ninety-two dollars and thirty-five cents ($592.35) as required under the Loan. *Id.* at 2; *see also* Compl. § V. On August 4, 2013, the car was totaled in an accident and Plaintiff's insurance company subsequently paid Defendant a lump sum of twenty thousand, seven hundred and seventy-five dollars and forty cents ($20,775.40). Compl. § III(C).

B. **Procedural Background**

By way of a Complaint filed in the United States District Court for the Southern District of New York on May 18, 2015, Plaintiff commenced this action against Santander, seeking to recover damages arising out of the Loan.[1] DE [2]. According to Kwon, the Loan "was usurious in terms of interest rates, charging [him] at 25%, which is contrary to the maximum interest rate in New York, which is 16% per annum." Compl. § III(C). Accordingly, Plaintiff seeks to recover a total of two hundred and forty-five thousand, one hundred and seventy-one dollars and six cents

---

[1] On June 9, 2015, this action was transferred to this Court from the Southern District of New York. DE [5].

($245,171.06) in damages "on [the] basis of usury and breach of contract." *Id.* at § V; *see also* Pl.'s Aff. at 1. Plaintiff also claims that he is entitled to damages for, *inter alia*, deceptive business practices, pain and suffering, emotional distress, increased insurance premiums, and opportunity costs. Compl. §§ III(C), V. Plaintiff subsequently withdrew his claims for pain and suffering and emotional distress. DE [29].

On February 4, 2016, Defendant filed the instant fully briefed motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). DE [35]. According to Santander, Plaintiff's claim sounding in usury is barred by the one (1)-year statute of limitations applicable to claims arising under N.Y. Gen. Oblig. Law § 5-513. *See* Defendant's Affirmation and Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), DE [35-6], ¶ 2. Defendant further argues that Plaintiff fails to state a claim for relief under either N.Y. Gen. Oblig. Law § 5-513 or N.Y. Gen. Bus. Law § 349. *Id.* In opposition to Santander's motion, Plaintiff argues, *inter alia*, that "there was a clear cause of action in this case, which is based on an unlawful debt under the federal RICO Act . . . ." *See* Plaintiff's Affirmation and Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), DE [35-8], at 1. Kwon further contends that Defendant violated the Servicemember's Civil Relief Act of 2003, 50 U.S.C. § 3911 *et seq.*, by sharing "an adverse report relating to the creditworthiness of [Plaintiff] . . . to a person engaged in the practice of assembling or evaluating consumer credit information." *Id.* at 2.

II. **LEGAL STANDARD**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citations omitted); *see also Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

4

## III. DISCUSSION

Liberally construing Plaintiff's Complaint, the Court interprets it to assert claims arising under: (i) N.Y. Gen. Oblig. Law §§ 5-511 and 5-513; (ii) the Racketeer Influenced and Corrupt Practices Act of 1970 ("RICO Act"), 18 U.S.C. § 1961 *et seq.*; (iii) N.Y. Gen. Bus. Law § 349; (iv) the Servicemember's Civil Relief Act of 2003 ("SCRA"), 50 U.S.C. § 3911 *et seq.*; and (v) common law breach of contract. For the reasons set forth herein, Plaintiff fails to plausibly state a claim under any theory of liability.

### A. New York General Obligations Law

In New York, "a loan to an individual need only bear an interest rate higher than 16% per annum to be unenforceable." *Weisel v. Pischel*, 197 F.R.D. 231, 240 (E.D.N.Y. 2000); *see also* N.Y. Gen. Oblig. Law § 5-501(2) ("No person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on the loan or forbearance of any money, goods, or things in action at a rate exceeding the rate . . . prescribed [by N.Y. Banking Law § 14-a]."); N.Y. Banking Law § 14-a ("The maximum rate of interest provided for in section 5-501 of the general obligations law shall be sixteen per centum per annum."). Pursuant to N.Y. Gen. Oblig. Law § 5-511, a usurious debt "shall be void . . . ." N.Y. Gen. Oblig. Law § 5-511(1); *see also Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) ("Usurious loans are void."). Moreover, "a borrower who has paid interest under a usurious loan contract has the right to recover interest paid that exceeded the statutory maximum." *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 307-08 (E.D.N.Y. 2010) (citing N.Y. Gen. Oblig. Law § 5-513).

Pursuant to N.Y. C.P.L.R. 215, an "action to recover any overcharge of interest or to enforce a penalty for such overcharge" must be commenced within one (1) year. N.Y. C.P.L.R.

5

215(6); *see also Chassman v. Shipley*, No. 15 Civ. 5228, 2016 WL 1451585, at *3 (S.D.N.Y. Apr. 12, 2016) (holding that N.Y. C.P.L.R. 215(6)'s one (1)-year statute of limitations "applies for any claim alleging an overcharge of interest, regardless of whether the claim is contractual or statutory"). Therefore, state law usury claims arising under N.Y. Gen. Oblig. Law § 5-513 are subject to a one (1)-year statute of limitations. *See, e.g., Cullen v. Margiotta*, 811 F.2d 698, 717 (2d Cir. 1987) (holding that "the one-year limitations period provided by CPLR § 215(6) would apply" to a state law usury claim); *McNellis v. Raymond*, 329 F. Supp. 1038, 1043 (N.D.N.Y. 1971) (observing that "[a] claim based on [N.Y. Gen. Oblig. Law § 5-513] . . . would be time-bared by the built-in one year statute of limitations"). A claim to recover an overcharge of interest accrues on the date that the overpayment is made. *McNellis*, 329 F. Supp. at 1045-46.

To the extent that Plaintiff seeks to recover interest paid under the Loan on the grounds that the agreement was void pursuant to N.Y. Gen. Oblig. Law §§ 5-511 and 5-513, his claim is time-barred by N.Y. C.P.L.R. 215's one (1)-year statute of limitations. Kwon alleges that he entered the contract to purchase the automobile on May 14, 2013, and subsequently made payments on the Loan in June, July, and August 2013. Compl. § III(C); Pl.'s Aff. at 1. Accordingly, Plaintiff's cause of action to recover any overpayments pursuant to N.Y. Gen. Oblig. Law § 5-513 accrued in August 2013 at the latest, and his May 8, 2015 Complaint was untimely with respect to his claim arising under N.Y. Gen. Oblig. Law § 5-513. *See McNellis*, 329 F. Supp. at 1043.

In opposition to Defendant's motion, Kwon argues, *inter alia*, that "since this is a federal case and is bas[ed] . . . on federal statutes, . . . the statute of limitations imposed by New York State law is inapplicable . . . ." Pl.'s Opp'n at 3. As an initial matter, in his Complaint, Plaintiff cites diversity of citizenship as the basis for federal court jurisdiction. Compl. § II(A). Where

federal jurisdiction is premised on diversity of citizenship, "[i]t has long been established as a matter of federal law that state statutes of limitations govern the timeliness of state law claims . . . ." *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989) (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 65 S. Ct. 1464 (1945)); *see also Vincent v. Money Store*, 915 F. Supp. 2d 553, 561 (S.D.N.Y. 2013) ("[I]n evaluating the timeliness of the claims, all based on state law, the Court must look to the state statutes of limitations . . . ."). In his Complaint, Plaintiff acknowledges that he seeks to recover for "usury, which was forbidden by state law in New York . . . ." Compl. § V. Because "federal courts apply the relevant state statute of limitations to pendent state claims," *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 66 n.2 (E.D.N.Y. 2002), N.Y. C.P.L.R. 215 applies to Plaintiff's claim arising under N.Y. Gen. Oblig. Law § 5-513. *See Arnold v. KPMG LLP*, 543 F. Supp. 2d 230, 235 (S.D.N.Y. 2008) (applying state law statute of limitations to the plaintiff's state law claims in federal court).

Based on the foregoing, Plaintiff's claims arising under N.Y. Gen. Oblig. Law §§ 5-511 and 5-513 are untimely, and Defendant's motion to dismiss those claims is granted.

### B. Civil RICO Act

Although Plaintiff does not explicitly invoke the civil RICO Act in his Complaint, in his Affidavit and Written Deposition attached to his Complaint, Plaintiff claims that he is a "victim of . . . collusion of interest rates that can be prosecuted under the RICO act." Pl.'s Aff. at 2. In opposition to Defendant's motion, Plaintiff argues that "there was a clear cause of action in this case, which is based on an unlawful debt under the federal RICO Act . . . ." Pl.'s Opp'n at 1. Additionally, in his December 28, 2015 letter withdrawing his claims for pain and suffering and emotional distress, Plaintiff wrote that he was claiming "an unlawful debt under the federal RICO

Act." DE [29]. In light of Plaintiff's *pro se* status, the Court considers whether Plaintiff states a claim for civil RICO liability.

1. <u>Whether Plaintiff's Civil RICO Claim is Timely</u>

Civil RICO claims under 18 U.S.C. § 1964(c) are subject to a four (4)-year statute of limitations. *Frankel v. Cole*, 313 F. App'x 418, 419 (2d Cir. 2009) (citing *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 107 S. Ct. 2759 (1987)). For a civil RICO Act claim, the statute of limitations begins to run "when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). Because Plaintiff obtained the Loan on May 14, 2013, and made payments thereunder in June, July, and August 2013, *see* Compl. § III(C), his May 18, 2015 Complaint was timely for purposes of the four (4)-year statute of limitations applicable to civil RICO claims.

2. <u>Plaintiff's Civil RICO Claim</u>

Pursuant to 18 U.S.C. § 1962, it is "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). An "unlawful debt" for purposes of civil RICO liability is defined as "a debt . . . which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State of Federal law, where the usurious rate is at least twice the enforceable rate." *Id.* at § 1961(6)(B). Therefore, where a civil RICO claim is premised on the collection of an allegedly unlawful debt, the plaintiff must establish, *inter alia*: "(1) that the debt was unenforceable under state or federal usury laws; (2) that the debt carried twice the enforceable interest rate; and (3) that the debt was incurred in connection with the defendants' business of lending money at a usurious rate." *Weisel*, 197 F.R.D. at 241; *see also Durante Bros.*

*& Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 247-48 (2d Cir. 1985) (establishing civil RICO Act standard for claims premised on the collection of an unlawful debt).

Plaintiff fails to state a claim for civil RICO liability against Santander. According to Kwon, his claim "is based on an unlawful debt under the federal RICO Act . . . ." Pl.'s Opp'n at 1. However, Plaintiff alleges that the Loan "was usurious in terms of interest rates, charging [him] at 25% [*sic*], which is contrary to the maximum interest rate in New York, which is 16% per annum." Compl. § III(C). Although the Loan's interest rate exceeds N.Y. Gen. Oblig. Law § 5-501's maximum enforceable interest rate of sixteen percent (16%) per annum, it is not twice the maximum enforceable rate, and therefore does not constitute an "unlawful debt" for purposes of civil RICO liability. *See Durante Bros. & Sons, Inc.*, 755 F.2d at 247 ("[A] usurious debt is an 'unlawful debt' where the usurious rate 'is at least twice the enforceable rate.'") (quoting 18 U.S.C. § 1961(6)); *see also In re Bennett*, 142 B.R. 616, 620 (Bankr. N.D.N.Y. 1992) ("[T]o constitute an unlawful debt within the meaning of 18 U.S.C. § 1961(6), the annual interest rate on the Note must be at least 32%."). As Plaintiff fails to allege that the Loan "carried twice the enforceable interest rate," *Weisel*, 197 F.R.D. at 241, he fails to state a claim for civil RICO liability. Therefore, Defendant's motion to dismiss Plaintiff's civil RICO claim is granted.

### C. Servicemember's Civil Relief Act of 2003

The SCRA provides in relevant part that the:

> [a]pplication by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension . . . in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability of that servicemember shall not itself (without regard to other considerations) provide the basis for . . . [a]n adverse report relating to the creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information.

50 U.S.C. § 3919(3).

In opposition to Defendant's motion to dismiss, Plaintiff argues for the first time that he "believes that the defendant has shared an adverse report relating to the creditworthiness of [him] . . . to a person engaged in the practice of assembling or evaluating consumer credit information." Pl.'s Opp'n at 2 (internal quotation marks omitted). According to Kwon, he exercised his rights under the SCRA "with Discover Financial before being called up to active duty as a New York National Guard [*sic*] after the September 11, 2001 terrorism attacks in New York City." *Id.* However, neither these facts nor this theory of liability can be plausibly inferred from Plaintiff's Complaint, and "[i]t is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)). Because no construction of Plaintiff's Complaint supports the inference that he is entitled to relief under the SCRA, Santander's motion to dismiss is granted with respect to that claim.

### D. New York General Business Law § 349

Pursuant to N.Y. Gen. Bus. Law § 349 "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. Gen. Bus. Law § 349(a). To state a claim for a violation of N.Y. Gen. Bus. Law § 349, the plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Relevant here, "[t]he 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010); *see also Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 75 F. Supp. 3d 575, 591 (E.D.N.Y. 2015) ("To show

10

consumer-oriented conduct, the plaintiff would have to demonstrate that the acts or practices complained of have a broader impact on consumers at large.") (internal quotations and alterations omitted). In contrast, "New York courts have recognized that 'private contract disputes' between the parties do not 'fall within the ambit of [N.Y. Gen. Bus. Law § 349].'" *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 498 (S.D.N.Y. 2011) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529 (1995)).

Plaintiff fails to allege "consumer-oriented" conduct sufficient to state a claim arising under N.Y. Gen. Bus. Law § 349. According to Kwon, Defendant engaged in deceptive business practices by "not giving [him] a contract or bill of sale at the point of sale and adding in warranty charges that [he] declined." Compl. § III(C). These allegations are uniquely specific to Plaintiff, and Kwon does not allege that Santander's alleged "acts or practices . . . [had] a broader impact on consumers at large." *Long Beach Rd. Holdings, LLC*, 75 F. Supp. 3d at 591. Rather, Plaintiff's allegations, at most, suggest a private disagreement between the parties, which is insufficient to state a claim arising under N.Y. Gen. Bus. Law § 349. *WorldHomeCenter.com, Inc.*, 851 F. Supp. 2d at 498. Therefore, Defendant's motion to dismiss Plaintiff's claim for deceptive business practices under N.Y. Gen. Bus. Law § 349 is granted.

### E. Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 331 (S.D.N.Y. 2010) (quoting *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d Dep't 2010)). Moreover, to sufficiently allege a breach of contract, the

11

"[p]laintiff must provide specific allegations as to . . . what provisions of the agreement were breached as a result of the acts at issue." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009).

Kwon fails to state a claim for breach of contract against Santander. Although Plaintiff alleges, and Defendant does not dispute, that a contract existed between Kwon and Santander, *see* Def.'s Mem. ¶ 7, Plaintiff fails to allege any facts that support an inference that Defendant somehow breached that contract. Rather, in his Complaint, Plaintiff states in conclusory terms that he is "suing for breach of contract" without identifying any factual basis in support of his claim. Compl. § III(C). Even construing Plaintiff's allegations liberally, because the Complaint is devoid of any factual allegations regarding Santander's alleged breach of the Loan agreement, Plaintiff fails to state a claim for breach of contract against Santander.[2] *See Abu Dhabi Commercial Bank*, 651 F. Supp. 2d at 183. Therefore, Defendant's motion to dismiss is granted with respect to Plaintiff's breach of contract claim.

### F. Leave to Replead

Pursuant to Fed. R. Civ. P. 15, leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave to amend should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009). Relevant here, "[w]here the problem with a claim 'is substantive . . . better pleading will not cure it,' and '[r]epleading would thus be futile.'" *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 268 (S.D.N.Y. 2011) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Ultimately, the decision whether to grant "an opportunity to

---

[2] To the extent that Plaintiff's allegation that Masterz forged the Loan agreement to include the warranty charge that Kwon previously declined, *see* Pl.'s Aff. at 1-2, is construed as an allegation regarding a breach of the Loan agreement, Masterz is not a party to this action, and the Complaint contains no similar allegations regarding Santander.

amend is within the discretion of the District Court . . . ." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Although Plaintiff does not seek to replead his claims in the event they are dismissed, given his *pro se* status, the Court grants him leave to file an amended complaint. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("[T]he court should not dismiss [a *pro se* plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). However, because Plaintiff's claim arising under N.Y. Gen. Oblig. Law § 5-513 is time-barred pursuant to N.Y. C.P.L.R. 215, it is futile, and therefore dismissed with prejudice. *See Jennis v. Rood*, 310 F. App'x 439, 440 (2d Cir. 2009) (holding that a "proposed amendment was futile since the statute of limitations had run").

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss is granted in its entirety. Plaintiff's claim arising under N.Y. Gen. Oblig. Law § 5-513 is dismissed with prejudice. Plaintiff's remaining claims are dismissed without prejudice and with leave to replead in an amended complaint to be filed on or before November 7, 2016.

Dated: Central Islip, New York
September 30, 2016

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge